[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10261
Non-Argument Calendar
_____

Agency No. A206-129-923

EGOR VIKTOROVICH RUBANOV,
IULIIA FEDOROVNA RUBANOVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 30, 2017)

Before MARTIN, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Egor Viktorovich Rubanov ("Petitioner"),[1] a citizen of Russia, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ").  The IJ's decision denied asylum and withholding of removal.[2]  No reversible error has been shown; we deny the petition.

We review the IJ's and the BIA's decisions in this case because the BIA agreed with the IJ's reasoning.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1350 (11th Cir. 2009) (explaining that when the BIA agrees with a finding of the IJ, we review both decisions).  We review legal determinations de novo.  Id. And we review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004 (en banc) (quotations omitted).  We "view the record evidence in the light most favorable to

---

[1] Petitioner's asylum application also sought derivative relief for his wife, Iuliia Fedorovna Rubanova, who is listed as a petitioner in this appeal.  Our decision about Petitioner also applies to Rubanova.

[2] The IJ also denied relief under the Convention Against Torture.  This claim is not before us on appeal: Petitioner failed to challenge this denial in his appeal to the BIA and has failed to raise the issue in his appellate brief.  See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

the agency's decision and draw all reasonable inferences in favor of that decision." Id. at 1027.  To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion.  8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1).  The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence.  Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

In support of his application for relief, Petitioner contended that he suffered persecution on account of his refusal to support the United Russia political party. In 2010, members of the United Russia party took over management of the factory where Petitioner worked.  Petitioner and his fellow coworkers were then pressured to join the United Russia party.  When Petitioner refused to do so, he was demoted; and his salary was reduced.  Petitioner ultimately resigned in December 2010.

Petitioner also operated a few local fitness clubs and -- beginning in 2002 -- had hosted fitness competitions designed to encourage children and teens in his community to get more exercise.  In September 2012, two men from the United Russia party approached Petitioner and told him to conduct his fitness competitions

3

under the party's name.  When Petitioner refused, the men told Petitioner that he and his family would have problems.

Beginning in October 2012, a group called the "Pedophile Hunters" accused Petitioner of being a pedophile and tried to extort money from him.  Petitioner first thought the group was a gang targeting him because he was well-known in the community and was financially stable.  Petitioner later believed that the Pedophile Hunters were controlled by a man -- Vladimir Dutsev -- who was a "famous gangster" and a leader within the United Russia party.  In 2013, a local newspaper -- then owned by Dutsev -- printed an article describing Petitioner as being a known pedophile.  As a result of the false accusations, Petitioner received threats and was harassed by members of the public.

In May 2013, security guards blocked Petitioner's access to his fitness clubs. The person claiming to be the new owner of the clubs -- who Petitioner had never heard of -- then threatened to "destroy" Petitioner if he participated in "any kind of activity."  When Petitioner asked his business partner what had happened, the business partner told Petitioner that he had been threatened and could not speak with Petitioner.  Petitioner complained to the local police, but nothing was done.

On 2 June 2013, Petitioner was struck in the head by two unknown men, causing Petitioner to suffer a concussion.  As the men ran away, they shouted derogatory comments and said "this is only the beginning."  Petitioner reported the

4

incident to the local police, the district police department, and other government authorities; but nothing was done. Shortly thereafter, Petitioner received a message from an unknown person who threatened to lodge more false accusations against Petitioner if he complained to the authorities again.

On 11 June 2013, the police came to Petitioner's parents' house with a search warrant for a laptop computer, which was not found.

The next day, three unknown people entered Petitioner's home and tied his wife to a chair. The men threatened Petitioner's wife with a knife and tried to force her to sign an unknown document. When Petitioner arrived home, he chased the men off. No one was injured. Petitioner made no report to the police. After this incident, the Petitioner and his wife fled to the United States.

The IJ determined that (1) the events Petitioner complained of did not rise to the level of persecution and (2) Petitioner had failed to demonstrate that he was mistreated on account of a protected ground. The IJ also concluded that Petitioner showed no objective well-founded fear of future persecution. As a result, the IJ concluded that Petitioner was ineligible for asylum or for withholding of removal. The BIA agreed with the IJ's reasoning.

Substantial evidence supports the IJ's and BIA's decisions that Petitioner failed to demonstrate past persecution on account of a protected ground. About the accusations of pedophilia, the demands for money, and the physical attacks on

5

Petitioner and his wife, the IJ determined that nothing evidenced that those incidents were carried out by people affiliated with the United Russia party.  Also, the IJ determined that these events were likely motivated by a desire to extort money from Petitioner or as a result of generalized criminal activity.  We have said that evidence that "is consistent with acts of private violence or . . . that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1246, 1258 (11th Cir. 2006).

To the extent Petitioner was mistreated by people identifying themselves as members of the United Russia party, those events do not rise to the level of persecution.  For instance, although Petitioner was demoted and his pay was reduced, we have said that such acts constitute no persecution.  See Barreto-Clara v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) ("employment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution").  Also, the 2012 threat that Petitioner would have problems if he refused to allow the United Russia party to sponsor his fitness competitions is no persecution.  Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted).

6

Because Petitioner has shown no past persecution, he is entitled to no rebuttable presumption of a well-founded fear of future persecution. To show a well-founded fear of future persecution, therefore, Petitioner must establish that his fear both was "subjectively genuine and objectively reasonable." Al Najjar v. Ashcroft, 257 F.3d 1262, 1289 (11th Cir. 2001). A petitioner who fails to demonstrate past persecution can still satisfy the objective element by showing that he has "good reason to fear future persecution." Id. For the reasons already discussed, Petitioner has shown no such good reason. In addition, Petitioner has offered no evidence sufficient to compel us to reverse the IJ's determination that Petitioner could avoid mistreatment by relocating to another area within Russia.

Substantial evidence supports the IJ's and BIA's decisions that Petitioner was unentitled to asylum, and we are not compelled to reverse those decisions. Petitioner's failure to establish eligibility for asylum also forecloses his eligibility for withholding of removal. See Forgue, 401 F.3d at 1288 n.4.

PETITION DENIED.